UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHELLE CANTU, as Next Friend of S.C., a minor,<br>　　　PLAINTIFF,<br><br>V.<br><br>SIGNATURE HEALTHCARE SERVICES, LLC; and,<br>GEORGETOWN BEHAVIORAL HEALTH INSTITUTE, LLC<br>　　　DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.: 1:22-CV-00039 |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff MICHELLE CANTU, as Next Friend of S.C., a minor, by and through her attorney of record, Taylor Montgomery of the Batrice Law Firm, PLLC, complaining of Defendants SIGNATURE HEALTHCARE SERVICES, LLC ("Signature") and GEORGETOWN BEHAVIORAL HEALTH INSTITUTE, LLC ("GBHI"), and for cause of action would respectfully show the Court as follows:

### BRIEF OVERVIEW

1.　　This lawsuit arises out of an incident wherein a minor was sexually assaulted because of the Defendants' failure to supervise their patients at a mental health facility. Unfortunately, Plaintiff's assault was not an isolated event and resulted from Defendants' long-standing disregard for patient safety. As a result, Plaintiff brings this suit and seeks redress for Defendants conduct detailed herein.

### PARTIES

2.　　Plaintiff Michelle Cantu brings this suit as Next Friend and on behalf of S.C., her minor daughter. At the time of the incident in question, S.C. was a minor and a person with a

disability as contemplated and defined by the Americans with Disabilities Act and its implementing regulations.[1]

3.  Defendant Signature is a Michigan limited liability company doing business in the State of Texas and parent/owner of Defendant GBHI. At all relevant times, Signature had control over, was involved in, and directed the activity of GBHI as alleged herein. Defendant Signature may be served with process by serving its registered agent for service Northwest Registered Agent LLC at 5900 Balcones Drive, Suite 100, Austin, TX 78731. Citation is requested at this time.

4.  Defendant GBHI is a Texas limited liability company and an agent of Defendant Signature. Defendant GBHI may be served with process by serving its registered agent for service Joe Rodriguez at 3101 S. Austin Ave., Georgetown, TX 78626. Citation is requested at this time.

5.  Defendant Signature and Defendant GBHI are both sued in any of their assumed, common, trade, and/or business names and notice is hereby given so that real parties in interest may appear and defend this action.

## JURISDICTION

6.  Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has jurisdiction because the matters in controversy and Plaintiff's claims arise under federal law. Additionally, this Court has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state and common law claims arise out of the same facts as Plaintiff's claims that arise under federal law.

---

[1] *See e.g.*, 29 U.S.C. § 705 (20) (B) and 29 C.F.R. § 1630.2.

7. Moreover, this Court has jurisdiction pursuant to the United States Constitution, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the federal regulations, issued thereunder.

8. Further, this Court has jurisdiction to award attorney's fees and costs to the Plaintiff under the Rehabilitation Act, pursuant to 29 U.S.C. § 794a; the ADA, pursuant to 42 U.S.C. § 2000d et seq; 42 U.S.C. Sections 1983 and 1988; and Chapter 321 of the Texas Health & Safety Code.

9. This Court has personal jurisdiction over Defendant Signature because it is a Michigan limited liability company that regularly conducts business in this District. Likewise, this Court has personal jurisdiction over Defendant Signature because it is authorized to do business in this District, regularly conducts business in this District, has sufficient minimum contacts with this state, and/or sufficiently avails itself of the markets of this state. Further, this Court has personal jurisdiction over the Defendants because their actions giving rise to Plaintiffs' claims took place in this District.

## VENUE

10. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS
### Defendants' Background & Company Structure

11. Defendant Signature is a company owned by Dr. Soon K. Kim that owns and manages numerous psychiatric hospitals across the nation, including the Georgetown Behavioral Health Institute in Georgetown, Texas.

12. For over a decade, Signature's mismanagement of their hospitals has resulted in a number of injuries, deaths, and other sexual assaults.

- In 2008, a robbery suspect placed under Signature's care snuck out of his room and raped a 14-year-old girl.[2]  A Signature worker assigned to monitor the rapist was found sleeping on the job during the rape.

- In 2011, investigators in Illinois found that numerous sexual assaults occurred at Signature's facilities due to their failure to "ensure adequate staffing/monitoring" at their facilities.[3]

- In 2019, a jury awarded $13.25 million to three women that were raped by a Signature worker.[4]  Notably, Signature hired the worker despite having a prior rape conviction.

- In 2021, Signature agreed to pay $2,850,000 to resolve a lawsuit concerning Signature's systemic understaffing practices.[5]  Records show that Signature failed to provide adequate supervision at their facilities and patients often outnumbered staff at a 19:1 ratio.

13. In 2014, Defendants opened the Georgetown Behavioral Health Institute, LLC (GBHI) in Georgetown, Texas.

14. Defendant GBHI is a limited liability company owned by Defendant Signature that operates the Georgetown Behavioral Health Institute in Georgetown, Texas.

15. Unfortunately, Defendants continued their all too predictable pattern of disregard and neglect towards the health and welfare of their patients at their Georgetown facility.

- In 2016, Defendants failed to monitor a known hyper-sexual patient and prevent him from sexually assaulting another patient.[6]  Following the assault, Defendants failed to properly document the attack and properly monitor other hyper-sexual patients.

---

[2] *Deaths at rehab hospital in Pasadena draw scrutiny*, Los Angeles Times (August, 21, 2008), https://www.latimes.com/local/la-me-lasencinas-august-story.html; see also County of Los Angeles v. Aurora Las Encinas, LLC, B245649 (Cal. App. 2d Mar. 11, 2014).

[3] *Report faults care of young psychiatric patients at Chicago Lakeshore Hospital*, Chicago Tribune (May 17, 2011), https://www.chicagotribune.com/lifestyles/health/ct-met-lakeshore-hospital-report-20110517-story.html.

[4] *Jury awards 3 women $13.25M after sexual misconduct at a California psychiatric facility*, USA Today (August 13, 2019), https://www.usatoday.com/story/news/nation/2019/08/13/three-women-13-million-sexual-misconduct-psychiatric-hospital/2001811001/; see also *Samantha B vs. Aurora Vista Del Mar Hospital LLC*, No. 56-2015-00464635-CU-PO-VTA (California – Ventura County).

[5] *See e.g., Brooke v. Aurora Behavioral Healthcare - Santa Rosa, LLC*, Case No. SCV-261926 (Superior Court of the State of California, County of Sonoma) at https://www.valerian.law/aurora; see also *Aurora Chicago Lakeshore Hospital*, DAB CR5480 (2019), at https://www.hhs.gov/about/agencies/dab/decisions/alj-decisions/2019/alj-cr5480/index.html.

[6] *See* Exhibit #1 AHCJ Public Reports (Extracts) at AHCJ 0003.

- In 2017, investigators found that Defendants' failure to monitor their facility led to another sexual assault by another known hyper-sexual patient.[7] Notably, investigators found that the assailant's "sexually acting out precautions were not documented or addressed" throughout any of his records.

- In 2018, investigators found that Defendants failed to protect the safety of their patients by failing to adequately staff the facility.[8]

- In 2019, Defendants' failure to supervise led to one patient being physically assaulted three times in less than three hours.[9] Notably, the third attack occurred while the patient was awaiting transfer to the ER for the first two attacks.

16.     Considering Defendants pattern of conduct across the nation, it is clear that these are not isolated events and are instead the result of Defendants' complete disregard for the safety of their patients. Defendants repeated conduct shows a blatant disregard for the safety of the general public all for the sake of profit.

**Plaintiff's Sexual Assault**

17.     In the Fall of 2019 S.C. experienced a worsening of the general and social anxiety. Her depression worsened and so did concerns for self-harm. In February, she began to have suicidal ideation.

18.     Fortunately, S.C. had enough insight to understand her problems and requested treatment. Her parents researched available services in the community and were attracted to a local hospital, the Georgetown Behavioral Health Institute in Georgetown, Texas.

19.     Defendants advertise that their facility has a specialized unit for adolescents "with person-centered treatment within a safe environment staffed by knowledgeable and empathetic individuals." Her parents called the facility, spoke with staff and scheduled an assessment. S.C.

---

[7] *See* Exhibit #1 at AHCJ 0011-13.
[8] *See* Exhibit #1 at AHCJ 0020-26.
[9] *Id*. at AHCJ 0029-30.

was admitted on the night of February 27, 2020. Plaintiff was in the care of Defendants as a patient until she was discharged on March 6, 2020.

20. On February 29, 2020, S.C.'s parents visited her at the facility and noticed, among other things, another female patient wandering around while wearing an ankle monitor. S.C.'s parents wondered what type of crime and behaviors would require a teenage girl to wear an ankle monitor.

21. Within a few days this female patient physically assaulted another female patient. There was an inadequate number of staff at the unit at that time. The offender was removed from the facility by law enforcement and placed in a juvenile detention center.

22. During this same period this same dangerous girl with the ankle monitor sexually assaulted S.C. in a common room of the Mesquite (Adolescent) Unit at GBHI. Once again, there was an inadequate number of staff at the unit at that time.

23. Defendants' facility was understaffed because Defendants failed to pay for and provide (1) an adequate number of staff members; (2) experienced staff members, and (3) an adequately trained staff.

24. Due to her sexual assault at the Georgetown Behavioral Health Center, S.C.'s mental health continued to deteriorate. After a suicide attempt, S.C. was admitted to the Dell's Mental Health Unit for about a week. S.C. has been in treatment since that time.

25. Before she entered the Georgetown Behavioral Health Center, S.C. was depressed and suicidal. Since leaving the facility, she was sexually molested she had had two active suicide attempts and three hospitalizations and long-term treatment as the Meridell Residential Treatment Center. She withdrew from her friends and family and isolated herself. She stopped

wanting to get help and said she didn't want to get better; she just wanted the illness to take over so she could just die.

26. While S.C.'s condition has improved, she still experiences flashbacks, panic attacks and symptoms of Post-Traumatic Stress Disorder related to the sexual assault she experienced.

27. On February 27, 2020, Plaintiff was placed in Defendants' care and admitted to the Georgetown Behavioral Health Institute in Georgetown, Texas. At relevant times, Plaintiff was in the care of Defendants as a patient until she was discharged on March 6, 2020.

28. At some point before her discharge on March 6, 2020, another patient sexually assaulted Plaintiff. Like numerous other victims of Defendants' business practices, Plaintiff's sexual assault occurred while Defendants' workers were nearby and did nothing to intervene or prevent the attack.

## CLAIMS PURSUANT TO THE REAHBILITATION ACT OF 1973

29. Plaintiff incorporates and re-alleges the above-referenced allegations as though set forth at length herein. In addition, each portion below likewise will incorporate by reference any such allegation above it, also as though set forth at length therein.

30. Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and its implementing regulations prohibit discrimination against the disabled by recipients of federal funding, including private organizations.[10]

31. Programs and activities covered by Section 504 include all of the operations of a "corporation, partnership, or other private organization, or an entire sole proprietorship" that is principally engaged in the business of providing healthcare.[11]

---

[10] *See e.g.*, *Barnes v. Gorman*, 536 U.S. 181, 184-185 (2002).
[11] *See e.g.*, 29 U.S.C. § 794(b)(3), 42 U.S.C. § 12131.

32.     Pursuant to the ADA Amendments Act, the definition of a disability for purposes of the Rehabilitation Act of 1973 conforms with the disability definitions under the ADA.[12]

33.     At the time of Plaintiff's sexual assault, Defendants were subject to Section 504 as entities principally engaged in the business of health care as defined by 29 U.S.C. § 794 and prohibited from discriminating against a person protected by Section 504 because of their disability.

34.     The facts as previously described identify Plaintiff as a qualified individual with a disability.

35.     The facts as previously described demonstrate violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 by Defendants against Plaintiff because of her disability

36.     Defendants' acts, omissions, and failures proximately caused injuries and damages to Plaintiff.

## CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT

37.     Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

38.     In addition to the above and in the alternative, the facts described further demonstrate violations of the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq ("ADA").

39.     At all relevant times, Plaintiff was a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2).

40.     At all relevant times, Defendant Signature was a "public entity" as defined in 42 U.S.C. § 12131(1), and is thus covered by the mandate of the ADA.

---

[12] *See e.g.*, 29 U.S.C. § 705(20)(B), 42 U.S.C. § 12102.

41. At all relevant times, Defendant GBHI was a "public entity" as defined in 42 U.S.C. § 12131(1), and is thus covered by the mandate of the ADA.

42. Additionally, Defendants operate facilities and provide operations and programs to the public within those facilities so as to likewise be covered under the mandate of the ADA.

43. Defendants failed to service Plaintiff, commensurate with their duties pursuant to Title II of the ADA, by not providing her accommodations to their program services, relative to her own unique and individualized needs.

44. Defendants failed to service Plaintiff, commensurate with their duties pursuant to Title II of the ADA, by not providing her modifications to their program services, relative to her own unique and individualized needs.

45. Defendants' failures proximately caused injuries and damages to Plaintiff.

## VIOLATIONS OF THE RICO ACT

46. Plaintiff alleges that the Defendants, acting in concert with each other, violated the RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. §§ 1961-1968, by the conduct and enterprise noted above, which was to use the monies generated by and through Medicare and other public and private insurance companies and provide as little care to patients, like Plaintiff, as possible.

## CIVIL CONSPIRACY

47. Defendants, named and un-named all met with each other for an unlawful purpose or in addition and in the alternative, a lawful purpose but used unlawful means, and had a meeting of the minds on these unlawful objectives, committed an overt act in furtherance of such objectives and Plaintiff suffered an injury as a proximate result of such wrongful act.

48. The reason for the conspiracy between the Defendants was to increase profits for both the corporate entity Defendant Signature and its local affiliate Defendant GBHI. In order to effectuate the conspiracy, Defendant Signature provided financial, administrative, and technical support as well as supervision and staff training on how local staff at the GBHI facility could increase admissions and lengths of stay for potential patients, to the financial benefit of all Defendants, and to the detriment of patients, like Plaintiff in this cause.

49. Plaintiff alleges that Defendants, acting in concert with each other, and with intent to commit civil conspiracy, and by and through its directors, officers, employees and agents, and contract services, willfully conspired to admit Plaintiff without following professional standards set forth by Section 504 of the Rehabilitation Act of 1973, Medicare, the Texas Health & Safety Code and common law.

50. As a direct and proximate result of Defendants' Conspiracy, Plaintiff suffered injuries.

## VIOLATIONS OF THE MENTAL HEALTH CODE

51. Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

52. In addition to and in the alternative, every one of the various allegations of acts and omissions, separate and apart from the above, and regardless of whether or not Defendants were negligent or acted intentionally as to other theories of recovery, constitute violations of Plaintiff's general patient rights under the Texas Mental Health Code.[13]

53. In addition to and in the alternative, Defendants violated Plaintiff's Patient Rights and the following statutory and regulatory provisions:

---

[13] *See* 7 TEX. HEALTH & SAFETY CODE §§ 571-578 ("Subtitle C. Texas Mental Health Code"); see also 25 TEX. ADMIN. CODE § 404.

- 7 Tex. Health & Safety Code § 576.021(a) (2)
- 7 Tex. Health & Safety Code § 576.021 (a) (5)
- 7 Tex. Health & Safety Code § 576.022 (a)
- 7 Tex. Health & Safety Code § 576.023
- 25 Tex. Admin. Code § 404.154 (3)
- 25 Tex. Admin. Code § 404.154 (24)
- 25 Tex. Admin. Code § 404.155 (a) (1) (D)
- 25 Tex. Admin. Code § 404.155 (a) (1) (E)
- 25 Tex. Admin. Code § 404.160 (1)
- 25 Tex. Admin. Code § 404.165

54. Pursuant to 4 Tex. Health & Safety Code § 321.003, Plaintiff brings this private cause of action predicated upon Defendants' violations of Plaintiff's Patient Rights and the aforementioned provisions.

55. By and through their agents, contractors, employees, and workers, Defendants failed to provide Plaintiff services commensurate with her Patient Rights, which proximately caused injury to Plaintiff.

## DEFENDANTS' NEGLIGENCE

56. Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

57. In addition to and in the alternative, Defendants were negligent in their capacity as health care providers and violated numerous statutory, regulatory, and common-law standards governing their duty to provide reasonable and safe inpatient mental health services.

58.     Defendants owed and breached numerous duties of care owed to Plaintiff through the acts, omissions, and conduct of their directors, officers, employees, agents, workers, and contractors.

59.     Defendants failed to exercise the degree of care, skill, supervision, and diligence ordinarily possessed and used by other mental health treatment centers and hospitals, under the same or similar circumstances.

60.     Further, Defendants negligently failed to provide adequate inpatient mental health services that a reasonable and prudent mental health treatment facility would have provided under the same or similar circumstances and their negligence proximately caused injury to Plaintiff.

61.     Notwithstanding the foregoing duties, at relevant times, Defendants did not act with reasonable care in the following ways:

- Defendants negligently failed to adequately supervise the medical providers at the facility.

- Defendants negligently failed to adequately supervise the nurses at the facility.

- Defendants negligently failed to adequately supervise the staff at the facility.

- Defendants negligently failed to adequately supervise the patients at the facility.

- Defendants negligently failed to adequately implement and enforce policies, procedures, bylaws or guidelines to adequately protect patients from sexual or physical assault.

- Defendants negligently failed to implement and enforce adequate customs of patient supervision.

- Defendants negligently failed to implement adequate standards of care for the supervision of patients, including but not limited to Plaintiff.

- Defendants negligently failed to implement adequate staffing standards to ensure patient safety and proper supervision.

- Defendants negligently failed to implement and enforce policy and procedure changes that were considered necessary in response to similar prior patient safety issues.

- Defendants negligently failed to educate nurses, supervisors and staff about the strategies for adequately and properly monitoring patients, including Plaintiff.

- Defendants negligently failed to protect and ensure the safety of patients, including Plaintiff.

- Defendants negligently allowed breakdowns of hospital procedures to occur, thereby placing the safety of patients, including Plaintiff's safety, in jeopardy.

- Defendants were otherwise careless and negligent.

62.  As a direct and proximate result of the above-described negligent acts and omissions of Defendants, Plaintiff was physically and sexually assault by another patient at Defendants' facility.

## DEFENDANTS' GROSS NEGLIGENCE

63.  Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

64.  Defendants' conduct described herein amounts to gross negligence.

65.  When viewed objectively from the standpoint of Defendants, their acts and omissions involved an extreme degree of risk considering the probability and magnitude of the potential harm to others.

66.  Defendants had actual subjective awareness of the risk involved and nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including Plaintiff.

67.  Moreover, Defendants' conduct was willful and malicious as the intent to provide hospital care to Plaintiff was not based upon Plaintiff's clinical needs but rather the self-serving financial needs of the Defendants.

68. As a result, Plaintiff seeks exemplary/punitive damages as allowed by law for Defendants' gross negligence. Such damages are necessary to discourage future misconduct by Defendants and other similarly situated providers. Further, such damages are proper and necessary to punish Defendants for the conduct.

## PROXIMATE CAUSE

69. Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

70. Each and every one of the acts, omissions, and violations by Defendants described herein when taken separately and/or collectively, constitute a direct and proximate cause of Plaintiff's injuries and damages set forth herein for which Defendants are jointly and severally liable.

## RATIFICATION & RESPONDEAT SUPERIOR

71. Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

72. In committing the acts alleged in the preceding paragraphs, Defendant GBHI, (including its employees, agents, and workers) was an agent of Defendant Signature and acting at all relevant times within the scope of their agency. As a result, Defendant Signature is liable as principal for all torts committed by its agents.

73. Defendants ratified the acts, omissions, conduct, and customs of all their administrators, personnel, professional and non-professional and staff. As a result, Defendants are liable for the negligent acts, omissions, and conduct of their employees, contractors, and agents under the doctrine of Respondeat Superior.

## DAMAGES

74. Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

75. Plaintiff has suffered injury and seeks damages in a sum within the jurisdictional limits of this Court and for which this lawsuit is brought.

76. Defendants' conduct directly and proximately caused Plaintiff to suffer numerous injuries and damages in the past. Further, Plaintiff will in all reasonable probability suffer from injuries and damages in the future as a result of Defendants' conduct. Accordingly, Plaintiff seeks compensation for her damages proximately caused by Defendants' conduct, which include (but are not limited to) Plaintiff's damages for her:

- Severe Emotional Distress (Past & Future);
- Mental Anguish (Past & Future);
- Physical Pain (Past & Future);
- Medical Care & Treatment (Past & Future);
- Loss of Earnings and Earning Capacity (Past & Future);
- Pre-Judgment and Post-Judgment Interest, and,
- Any and all other damages to which Plaintiff is entitled.

77. Accordingly, Plaintiff affirmatively pleads that she seeks over $1,000,000.00 in monetary relief, including all actual, economic, and noneconomic damages, as well as all costs, and expenses.

## EXEMPLARY DAMAGES

78. Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

79. As a result of Defendants' acts, omissions, and conduct, Plaintiff seeks and is entitled to recover punitive/exemplary damages. In the present case, exemplary/punitive damages are necessary to discourage future misconduct by Defendants and other similarly situated providers. Further, such damages are proper and necessary to punish Defendants for the conduct.

## ATTORNEY'S FEES & COSTS

80. Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

81. As a result of Defendants' acts, omissions, and conduct, it was necessary for Plaintiff to hire the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiff is entitled to an award of attorney fees and costs pursuant to the Rehabilitation Act, the ADA, and 42 U.S.C. § 2000 d et seq.

## JURY TRIAL DEMAND

82. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable of right by a jury pursuant to his rights as guaranteed by the Seventh Amendment to the United States Constitution and by corresponding provisions of state law.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays in the manner and particulars noted above, and in an amount sufficient to fully compensate her for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to the Rehabilitation Act, the ADA, 42 U.S.C. § 2000d et seq., together with pre- and post-judgment

interest, and court costs expended herein and for such other further relief as the Court may deem just and proper in law or in equity.

                Respectfully Submitted,

**TAYLOR S. MONTGOMERY**
Federal Bar No. 3402791
Texas State Bar No. 24106326
BATRICE LAW FIRM, PLLC
807 Las Cimas Parkway, Suite 150
Austin, Texas 78746
Phone: (512) 600-1000
E-mail: eservice@batricelawfirm.com

**MARTIN J. CIRKIEL, ESQ.**
Texas State Bar No. 783829
CIRKIEL & ASSOCIATES, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
Phone: (512) 244-6658
Facsimile: (512) 244-6014
E-mail: marty@cirkielaw.com

**ATTORNEYS FOR PLAINTIFF**